

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EDP:RSB
F. #2023R00300

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 11, 2025

**TO BE FILED UNDER SEAL**

By ECF

The Honorable Dora L. Irizarry
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Justinna Boatwright
>        Criminal Docket No. 23-488 (DLI)

Dear Judge Irizarry:

The government respectfully submits this letter in connection with the defendant's sentencing in the above-captioned case, currently scheduled for February 25, 2024.  For the reasons set forth below, the government respectfully submits that a sentence of 15 to 21 months' custody, below the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range, is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

I.      The Offense Conduct

A.      Background

Between October and December 2022, the defendant sold four firearms to an undercover officer with the New York City Police Department ("NYPD") on three separate occasions.  See September 20, 2024 Presentence Investigation Report ("PSR") ¶ 3.  All of the purchases were video and audio recorded.  Id.  ¶ 5.  This prosecution originated in approximately October 2022, when the NYPD learned of potential firearms trafficking by individuals in Brooklyn, New York, and obtained a phone number of a potential illegal firearms dealer.  Id. ¶ 4. The undercover officer attempted to contact that firearms dealer by calling the number but was unsuccessful.  Id.  Shortly thereafter, the defendant called the undercover officer back from a different phone number, and they discussed the sale of firearms.  Id.

After communicating via phone to arrange the purchase of a firearm, on October 25, 2022, the undercover purchased a loaded and defaced, .22 caliber Long Rifle semi-automatic pistol from the defendant for $1,200. Id. ¶ 5-6. At the time of purchase, the firearm had a round in the chamber and eight rounds in the magazine. Id. ¶ 6. Then, on November 2, 2022, the defendant sold a second defaced firearm to the undercover officer, specifically a .22 caliber Glock semi-automatic pistol for $880. Id. ¶ 7. The firearm was not loaded, but there was an extended magazine with 86 cartridges. Id. During this purchase the defendant made statements indicating that her supplier had "traveled down" to purchase the weapons, and that the supplier was travelling back to New York, and was in Virginia because he had to "pull over [and] rest up." Id.

Finally, on December 6, 2022, the undercover purchased two firearms from the defendant both of which had serial numbers and were traced back to purchases in November 2022 near Statesboro, Georgia, by an individual identified as Jose Miguel Marrero. Id. ¶ 8-9. Specifically, the undercover purchased a .380 caliber Smith and Wesson Bodyguard and a 9-millimeter Taurus G2G, the former had two magazines loaded with six bullets each, and the latter had an empty magazine. Id. ¶ 8. The undercover paid $1,300 for each firearm for a total of $2,600. Id. During this purchase the defendant made additional statements indicating that her supplier had family and was "travelling down" to purchase the weapons. Id. The larger investigation revealed that an individual named Jose Miguel Marrero and his mother, Jacqueline Christmas, straw purchased numerous weapons, including the firearms sold to the undercover on December 6, 2022, for a New York City-based relative, Tony Terry. Id. ¶ 3. Marrero and Christmas were prosecuted by the Southern District of Georgia for their participation in the crime. Id. FN 1. Tony Terry is being prosecuted by the Eastern District of New York and is pending sentencing. See Dkt No. 24-CR-244.

II.      Procedural Background

On November 28, 2023, a grand jury returned a seven-count indictment charging the defendant with one count of unlicensed firearms dealing of 18 U.S.C. § 922(a)(1)(A) (Count One), two counts of possession of a defaced firearm in violation of 18 U.S.C. § 922(k) (Counts Two and Three), two counts of firearms trafficking conspiracy in violation of 18 U.S.C. §§ 933(a)(3), 933(b), and 371 (Counts Four and Five), one count of firearms trafficking in violation of 18 U.S.C. § 933(a)(1) (Count Six), and one count of illegal interstate transport or receipt of a firearm acquired out of state in violation of 18 U.S.C. §922(a)(3) (Count Seven). See ECF No. 1. The indictment was unsealed on November 30, 2023, see ECF No. 3, and the defendant was arraigned before United States Magistrate Judge Cheryl L. Pollak, who released the defendant on bond. See ECF No. 4.

On June 18, 2024, the defendant pleaded guilty to Count One of the indictment before Your Honor. See ECF June 18, 2024 Minute Entry.

2



## III.   The Guidelines Calculation

The Probation department issued a second addendum to the PSR on January 13, 2025 that recalculated the offense level after determining that there was an error in the initial calculation.  Specifically, the October 25, 2022 firearms sale offense involved the sale of a semiautomatic firearm that is capable of accepting a large capacity magazine and thus the base level offense was not 12 as initially calculated pursuant to U.S.S.G. § 2K2.1(a)(7).  Instead, as per the second addendum to the PSR, the base level offense is 20 based on the characteristics of the large capacity magazine pursuant to U.S.S.G. § 2K2.1(a)(4)(B)(1).  The government agrees with the Guidelines calculation set forth in the second addendum to the PSR:

Count One: Bank Fraud

| | |
|---|---:|
| Base Offense Level (U.S.S.G. § 2K2.1(a)(4)(B)(1)) | 20 |
| Plus:   Three or more firearms (U.S.S.G. § 2K2.1(b)(1)(A)) | +2 |
| Plus:   Defaced serial numbers (U.S.S.G. § 2K2.1(b)(4)(B)) | +4 |
| Less:   Acceptance of responsibility (U.S.S.G. §§ 3E1.1(a) and (b)) | -3 |
| Total: | <u>23</u> |

Second Addendum PSR ¶¶ 17-27.

Based upon a total offense level of 23 and a criminal history category of I, the Guidelines advise a range of imprisonment on Count One of 46 to 57 months.  Id. ¶ 59.  The Plea Agreement signed by the parties estimated a Guidelines range of 15 to 21 months on Count One based on an adjusted offense level of 14 and a Criminal History Category of I—a range far lower than the correct Guidelines range.  Plea Agmt. ¶ 2.  Although the government recognizes that the difference between the correct Guidelines range and the Guidelines range in the plea agreement is significant and gives a substantial unearned benefit to the defendant, the Government will stand by the agreement it made with the defendant.

## IV.   Applicable Law

The Supreme Court has explained that a "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  As a matter of administration, and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [the court] may not presume that the Guidelines range is reasonable.  [The court] must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).  Specifically, 18 U.S.C. § 3553(a) requires that, in imposing a sentence, a court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

At sentencing, "the court is virtually unfettered with respect to the information it may consider."  United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988).  Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  Thus, the Court should first calculate the applicable Guidelines range, and then apply the Section 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

V.    Analysis

The government respectfully submits that a sentence of 15 to 21 months on Count One—the estimated Guidelines range set out in the Plea Agreement—would nonetheless be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

As an initial matter, the nature and circumstances of the instant offenses are extremely serious and warrants a significant period of incarceration.  See 18 U.S.C. § 3553(a)(1).  As set forth in the PSR, the defendant sold four firearms to an undercover police officer on three different occasions over a three-month period.  Two of the firearms were defaced, and one of the two defaced firearms had the ability to accept a high-capacity magazine.  The defendant was aware that at least some of these firearms were being brought across state lines as evidenced by her statements to the undercover.  These are significant crimes and deserve a significant sentence.

While the government did inadvertently miscalculate the guidelines estimate in the plea agreement, the government submits that a sentence within the range of 15-21 months specified in the plea agreement would be just under the circumstances. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ along with the defendant's lack of criminal history and compliance with the Court-ordered conditions of release (including pursuit of employment and education), the government submits that a significant prison sentence between 15 to 21 months would be appropriate. Such a sentence would reflect the seriousness of the offense, promote respect for the law, offer general deterrence and provide just punishment.

VI.     Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a custodial sentence within the range of 15 to 21 months' imprisonment.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:     _____/s/_____

Raffaela S. Belizaire
Assistant U.S. Attorney
(718) 254-6295

cc:     Clerk of the Court (DLI) (by ECF)
        Counsel for the defendant (by ECF)
        Jennifer E. Baumann, Probation Department (by email)